THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMES T. LANE, | : |
| Plaintiff, | : |
| v. | :  3:14-CV-01045 |
|  | :  (JUDGE MARIANI) |
| STATE FARM MUTUAL AUTOMOBILE | : |
| INSURANCE CO., | : |
| Defendant. | : |

## MEMORANDUM OPINION

### I. Introduction

Presently before the Court is a Motion to Dismiss Plaintiff's Complaint under Federal Rule of Civil Procedure 12(b)(6) (Doc. 7). The Complaint arises out of a dispute between the Plaintiff insured and his Defendant insurance carrier following an automobile accident in which Plaintiff suffered injuries. For the reasons that follow, the Court will deny the Motion.

### II. Factual Allegations and Procedural History

Plaintiff initially filed his Complaint in the Court of Common Pleas of Pike County. (*See* Compl., Doc. 1-1, at p. 1.) Defendant removed the action to federal court on the basis of diversity of citizenship. (*See* Notice of Removal, Doc. 1, at ¶ 21.) The removed Complaint alleges the following facts.

At all relevant times, "plaintiff was an insured under a policy of automobile insurance issued by State Farm which included $100,000 coverage for uninsured/underinsured claims." (Compl. at ¶ 4.) "On August 31, 2011, plaintiff James T. Lane sustained serious

personal injuries when his vehicle was struck by a vehicle driven by Jessica Neithardt and owned by Debbie M. Wall." (*Id.* at ¶ 5.) "The injuries sustained by James T. Lane included permanent hearing loss in his right ear, tinnitus, post-concusive syndrome, headaches, lumbar strains and sprains, neuropathy, inability to sleep due to severe headaches, and numbness in his pinky finger as a result of nerve damage." (*Id.* at ¶ 6.) As a result of these injuries, Plaintiff is unable to pursue his former household and leisure activities, such as "do[ing] yard work, lift[ing] weights, shoot[ing] trap, [and] rid[ing] his motorcycle," or to "perform all of his regular duties at work where he is a sales manager at O'Toole's Harley Davidson in Wurtsboro, New York." (*Id.* at ¶ 7.)

Plaintiff discovered in August 2013 that "there was no insurance covering the vehicle" that caused his injuries. (*Id.* at ¶¶ 8.) He put State Farm on notice of this fact on August 19 and "made claim for the uninsured/underinsured motorist coverage under the policy." (*Id.* at ¶ 10.)

On September 25, 2013, an inquest was held in the Supreme Court of New York, Orange County,[1] in order to assess Plaintiff's damages. (*Id.* at ¶¶ 11-12.) The inquest terminated in a "judgment in favor of plaintiff, James T. Lane, in the sum of $200,000.00." (*Id.* at ¶ 12.) State Farm did not appear at the inquest, despite having notice thereof. (*Id.* at

---

[1] Despite the fact that the New York courts oversaw at least part of the underlying tort action, the Court sees no choice of law problem on the face of the Complaint. Plaintiff is a Pennsylvania citizen, (Compl. at ¶ 1), who appears to have procured his automobile policy from his home in Pennsylvania. Thus, the Court assumes at this stage of the proceedings that Pennsylvania law applies. In so doing, the Court should not be interpreted as foreclosing argument on choice of law issues that may arise at an appropriate stage of the proceedings.

¶¶ 11, 13.) Immediately after the inquest, Plaintiff nonetheless provided it with copies of his medical records, other relevant evidence, and—later—a copy of the judgment. (*Id.* ¶¶ 14-16.)

The remainder of Plaintiff's allegations assert, essentially, that State Farm thereafter handled his claim in bad faith, by proceeding on a protracted course of delay. Though State Farm "thereafter sought and obtained numerous authorizations from plaintiff to enable [it] to obtain medical records" and on "January 15, 2014 . . . examined the plaintiff under oath," Plaintiff alleges that as of March 5, 2014, "State Farm had done nothing" to resolve Plaintiff's claim "other than demand copies of the records they had already been provided." (*Id.* at ¶¶ 16-18.) Therefore, on March 5, "Plaintiff reiterated his demand that State Farm settle the uninsured claim for the amount of the coverage, i.e., the sum of $100,000.00." (*Id.* at ¶ 19.) In response, State Farm counteroffered "to settle plaintiff's claim for the sum of $27,000.00," which Plaintiff apparently found unsatisfactory and unreasonable. (*See id.* at ¶¶ 20-23.)

Plaintiff then filed the instant Complaint on April 11, 2014. (*See id.* at p. 6.) It alleges two Counts, styled "Breach of 42 Pa. C.S.A. § 8371" (Count I) and "Breach of Common Law Duty" (Count II). The two claims are similar. The gravamen of Count I is the allegation that State Farm's "failure to act reasonably and promptly with respect to plaintiff's claim, and failure to effectuate a prompt, fair, and equitable settlement of a claim in which liability is indisputable, constitutes knowing and willful unfair claim settlement practices in violation of

42 Pa. C.S.A. § 8371." (*Id.* at ¶ 23.) The gravamen of Count II is the allegation that Defendant breached its duty of good faith and fair dealing under the insurance policy by "refusing to settle the claim after having received a demand for settlement within the policy limits." (*Id.* at ¶¶ 27-28.) Plaintiff therefore seeks compensation "[i]n an amount equal to the amount of coverage under the uninsured motorist provision of the defendant's issued automobile insurance policy, i.e., $100,000.00," plus "[i]nterest on the amount of the claim from the date the claim was made in the amount equal to the prime rate of interest plus 3%," punitive damages, court costs and attorney's fees, and any other relief found just and proper.[2] (*Id.* at p. 6.)

Defendant filed a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6). That Motion argues that the Section 8371 claim must be dismissed in its entirety and that the Breach of Duty claim must be dismissed except insofar as it seeks "to determine the value of the UIM claim within the $100,000 coverage limit." (Doc. 7 at p. 5.)

### III. Standard of Review

A complaint must be dismissed under Federal Rule of Civil Procedure 12(b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl.*

---

[2] With the exceptions of the demands for the policy limits and for additional relief found just and proper, Plaintiff's *ad damnum* clause is modelled after section 8371, which allows the court to "take all of the following actions:"

> (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
> (2) Award punitive damages against the insurer.
> (3) Assess court costs and attorney fees against the insurer.

42 Pa. Cons. Stat. Ann. § 8371.

4

*Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964-1965 (internal citations and alterations omitted). In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555, 127 S. Ct. at 1965. A court "take[s] as true all the factual allegations in the Complaint and the reasonable inferences that can be drawn from those facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v. Abbott Laboratories*, 707 F.3d 223, 231, n.14 (3d Cir. 2013) (internal citations and quotation marks omitted).

> *Twombly* and *Iqbal* require [a court] to take the following three steps to determine the sufficiency of a complaint: First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679, 129 S. Ct. at 1950 (internal citations and quotation marks omitted). This "plausibility" determination will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*.

## IV. Analysis

### a. Bad Faith (Count I)

Pennsylvania's bad faith statute, 42 Pa. Cons. Stat. Ann, § 8371 provides for certain remedies "[i]n an action arising under an insurance policy, if the court finds that the insurer acted in bad faith toward the insured."

"In the insurance context, the term bad faith has acquired a particular meaning," to wit:

> "Bad faith" on part of insurer is any frivolous or unfounded refusal to pay proceeds of a policy; it is not necessary that such refusal be fraudulent. For purposes of an action against an insurer for failure to pay a claim, such conduct imports a dishonest purpose and means a breach of a known duty (i.e., good faith and fair dealing), through some motive of self-interest or ill will; mere negligence or bad judgment is not bad faith.

*Terletsky v. Prudential Property & Cas. Ins. Co.*, 649 A.2d 680, 688 (Pa. Super. Ct. 1994) (quoting Black's Law Dictionary 139 (6th ed. 1990)).

"The standard for bad faith claims under § 8371 is set forth in *Terletsky*," *supra*. *Klinger v. State Farm Mut. Auto. Ins. Co.*, 115 F.3d 230, 233 (3d Cir. 1997). "There, the

Pennsylvania Superior Court applied a two-part test, both elements of which must be supported with clear and convincing evidence: (1) that the insurer lacked a reasonable basis for denying benefits; and (2) that the insurer knew or recklessly disregarded its lack of reasonable basis." *Id.*

The Court cannot conclude upon application of the *Terletsky* test that Plaintiff's Complaint fails to state a bad faith claim. Defendant's contrary arguments essentially rely on the premise that all of its actions as alleged in the Complaint alleges were reasonable and justified under the terms of its policy. (*See generally* Def.'s Br. in Supp. of Mot. to Dismiss, Doc. 8, at 8-13.) Defendant is correct to note that many of Plaintiff's allegations are mere legal conclusions not entitled to the assumption of truth under the governing Rule 12(b)(6) standards discussed in the preceding section. (*See id.* at 9-10.) These include paragraphs 21, 22, 23, 26, 27, and 28 of Plaintiff's Complaint. Nonetheless, the factual allegations that remain after the Court disregards Plaintiff's legal conclusions are enough to advance the case over "the line between possibility and plausibility of entitlement to relief" necessary to survive a Motion to Dismiss. *See Twombly*, 550 U.S. at 557, 127 S. Ct. at 1966 (internal alterations and quotation marks omitted). That is, the allegations that State Farm waited seven months before offering to settle Plaintiff's insurance claim, (Compl. at ¶ 19), that it only made the offer in the face of claims of bad faith and only then made an offer that was unreasonably low, (*see id.* at ¶ 20), that it had

7

been provided with copies of Plaintiff's medical records and the New York inquest judgment but declined to act on the information contained therein for several months, (*id.* at ¶¶ 14-15), and that it subjected Plaintiff to what may be interpreted as needlessly duplicative procedures that did not further advance the disposition of Plaintiff's insurance claim, (*id.* at ¶¶ 16-17), when accepted as true and favorably construed for purposes of a Motion to Dismiss, are enough to state a claim for a violation of section 8371 that is plausible on its face. While the allegations in the Complaint may be sparse, they are not so devoid of factual support as to justify dismissal for failure to state a claim.

In so concluding, the Court also rejects Defendant's arguments that the attachments to its Motion to Dismiss—which consist of documents purporting to be the insurance policy and certain correspondence between the parties—justify all of the actions alleged. It is true that, even though "courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record" when considering a Motion to Dismiss, a court may also "consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on that document" without thereby converting the Motion to Dismiss into one for summary judgment. *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). But several problems arise before the Court can consider the documents that Defendant attempts to submit.

First, it is not clear that plaintiff's claims are based on each document. Many of the documents are letters between counsel that may be tangentially implicated in the Complaint, but which do not form the *basis* of Plaintiff's claims. Moreover, it is not clear that all the documents are "undisputedly authentic." Defendant only relies on its own claims that each document constitutes the entire record of the conversations referenced in the Complaint; the Court has no assurance that the Plaintiff concurs with Defendant's characterizations.

But even more fundamentally, the documents submitted are irrelevant to a Motion to Dismiss a bad faith claim, and therefore would not alter the Court's decision even if they were properly considered under *Pension Benefit*. That is, even if the Court considered these documents and agreed with Defendant's conclusions that the insurance policy, taken in the abstract, authorized State Farm to investigate claims using any of the methods employed here, (*see* Doc. 8 at 11-12), it does not follow that State Farm's application of these various policy provisions to the specific facts of this case did not in fact constitute bad faith if they were undertaken for "a dishonest purpose" or in "breach of a known duty." See *Terletsky*, 649 A.2d at 688. For instance, if it was clear upon the evidence submitted in support of his claim that Plaintiff was entitled to coverage, Defendant cannot evade bad-faith liability simply because it employed procedures that would have been appropriate in other, factually more ambiguous cases.

Whether State Farm engaged in a frivolous or unfounded refusal to pay proceeds based on the information provided to it *in this specific case* is a question of fact that can only be resolved at the appropriate stage, after further discovery, even if policy provisions exist that could justify the same actions under different sets of facts.

### b. Breach of Duty of Good Faith and Fair Dealing (Count II)

Count II of the Complaint alleges a breach of Defendant's "obligation under law to act reasonably and in good faith in the settlement of the claim." (Compl. at ¶ 26.)

The Pennsylvania "Supreme Court has long recognized that 'the utmost fair dealing should characterize the transactions between an insurance company and the insured.'" *Berg v. Nationwide Mut. Ins. Co.*, 44 A.3d 1164, 1170 (Pa. Super Ct. 2012) (quoting *Dercoli v. Pennsylvania Nat. Mut. Ins. Co.*, 554 A.2d 906, 909 (Pa. 1989)). The "duty of good faith and fair dealing is implicit in an insurance contract." *Simmons v. Nationwide Mut. Ins. Co.*, 788 F. Supp. 2d 404, 408 (W.D. Pa. 2011) (collecting cases). As such, it is a *contractual* duty, *see Birth Center v. St. Paul Cos.*, 787 A.2d 376, 379 (Pa. 2001), which "acts as a term of the contract, and . . . arises from the contract itself," *Zaloga v. Provident Life & Accident Ins. Co. of Am.*, 671 F. Supp. 2d 623, 630 (M.D. Pa. 2009) (collecting cases). When such a duty can be implied from the contract, it is breached when, *inter alia*, "an insurer refuses to settle a claim that could have been resolved within policy limits without 'a bona fide belief that it has a good possibility of

winning.'" *Birth Center*, 787 A.2d at 379 (quoting *Cowden v. Aetna Cas. & Sur. Co.*, 134 A.2d 223, 229 (Pa. 1957) (internal alterations omitted)).

Moreover, "an action under § 8371 is distinct from the common law cause of action for breach of the contractual duty of good faith." *Ash v. Continental Ins. Co.*, 932 A.2d 877, 884 (Pa. 2007). The former does not alter or supplant the latter. *See e.g., Birth Center*, 787 A.2d at 389 ("[Section 8371] does not reference the common law, does not explicitly reject it, and the application of the statute is not inconsistent with the common law."); *Haugh v. Allstate Ins. Co.*, 322 F.3d 227, 236 (3d Cir. 2003) ("[T]he majority opinion and Justice Nigro's concurring opinion in *Birth Center* make clear that section 8371 does not supply the exclusive cause for action for suing an insurer for breach of the duty to act in good faith and make clear that an insurer's bad faith refusal to settle a claim can give rise to a contract cause of action."). Therefore, though the two causes of action are similar, they are not interchangeable, and Plaintiff may properly allege both here.

As Defendant argues, (*see* Doc. 8 at 15), the Third Circuit has noted "a significant legal question whether Pennsylvania law implies a covenant of good faith and fair dealing in every contractual relationship," *see Tangle v. State Farm Ins. Cos.*, 444 Fed. App'x 592, 594 n.2 (3d Cir. 2011). Because the duty arises from the terms of the contract, it is at least possible that the insurance policy at issue in this case does not

contain language that can imply a duty of good faith. However, Defendant's only arguments for the non-existence of a duty appear to be (1) that the Court should not simply assume that a duty exists when it is possible that it does not and (2) that because the policy allegedly contemplates disagreements between insurer and insured as to the latter's entitlement to benefits, allows for procedures to resolve such disputes, and allows the insurer to conduct its own investigations, then Plaintiff has failed to state a claim, because all his Complaint only alleges actions permitted by the policy. (*See* Doc. 8 at 15-16.)

The Court cannot accept these arguments. The second argument fails for the same reasons the Court declined to dismiss Count I: even if these procedures were permitted under the contract in appropriate cases, that does not mean that Defendant necessarily exercised them reasonably given the actual facts of this case. When Plaintiff has alleged a protracted refusal to pay the proceeds of the policy not justified by the existing record, as well as wrongful use of delay tactics by being forced to submit duplicative medical records and unnecessary sworn testimony, the Court finds that he has adequately pleaded a breach of the duty of good faith.

Because the theoretical availability of these procedures does not necessarily affect the reasonableness of their application in this case, the Court is unwilling to accept Plaintiff's first argument either. It is unwilling to rule as a matter of law at this early stage

that a duty to act in good faith does not exist when Plaintiff has pleaded facts which, if true, would indicate that Defendant engaged in tactics intended to frustrate the very purpose for which Plaintiff procured his insurance policy in the first place, i.e., to receive coverage in the event of an automobile accident. If true, this appears to be the type of breach of duty giving rise to a common law cause of action, as discussed in *Birth Center*, where an insurer refuses to settle a claim without a good faith basis to do so. *See Birth Center*, 787 A.2d at 379. Therefore, in light of Plaintiff's factual allegations, the Court cannot dismiss Count II just because it is possible that the language of the contract will indicate that a duty of good faith does not attach.

### c. *Ad damnum* Clause

Finally, Defendant argues that Plaintiff's *ad damnum* clause demands relief that is not permitted under Count II. (Doc. 8 at 16.) The *ad damnum* clause demands judgment:

a) In an amount equal to the amount of coverage under the uninsured motorist provision of the defendant's issued automobile insurance policy, i.e., $100,000.00;
b) Interest on the amount of the claim from the date the claim was made in the amount equal to the prime rate of interest plus 3%;
c) Punitive damages in an amount to be awarded by the jury;
d) Court costs and attorney's fees; and
e) That plaintiff have such other and further relief as may be just and proper.

(Compl. at p. 6.)

First, Defendant challenges demands (b) through (d) on the grounds that they "are for relief available only for Count I, under 42 Pa. C.S. § 8371." (Doc. 8 at 16.) And indeed, these demands mirror the permissible relief under section 8371 almost exactly. Cf. supra note 2. Thus, the Court can only assume that demands (b) through (d) refer to Count I. This conclusion is made all the more obvious because Count I does not contain its own demand for relief, thus implying that the "Wherefore" clause at the end of the Complaint refers to all the Counts alleged. Defendant's argument—which appears to ask the Court to construe the clause as only applying to Count II, and then to strike the demands that would otherwise be appropriate in the absence of such arbitrary narrowing—is both uncharitable and unduly formulaic.

Next, Defendant attacks demand (e) on the ground that it appears to "be a demand for consequential damages." (Doc. 8 at 16.) Defendant interprets the insurance policy as prohibiting the recovery of consequential damages. (Id. at 17.) Therefore, it argues that the relief demanded in (e) is not available under Count II. (Id. at 17-18.)

However, the Pennsylvania Supreme Court in Birth Center held the contrary, stating:

> Today, we hold that where an insurer acts in bad faith, by unreasonably refusing to settle a claim, it breaches its contractual duty to act in good faith and its fiduciary duty to its insured. Therefore, the insurer is liable for the known and/or foreseeable compensatory damages of its insured that reasonably flow from the insurer's bad faith conduct.

*Birth Center*, 787 A.2d at 389. Accordingly, to the extent that Defendant argues that Plaintiff is not entitled to compensatory damages as a matter of law, its argument runs afoul of clear and precedential case law. This is not to say that the law as applied to the facts of this case will necessarily support a claim for any specific demand in the *ad damnum* clause, even if Plaintiff ultimately succeeds in proving his allegations. However, this is an issue of law and fact that is not ripe for resolution at the Motion to Dismiss stage.

## V. Conclusion

For the foregoing reasons, Defendant's Motion to Dismiss (Doc. 7) is **DENIED**. A separate Order follows.

Robert D. Mariani
United States District Judge