# THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMES T. LANE, | : |
|       Plaintiff, | : |
| v. | :   3:14-CV-01045 |
| | :   (JUDGE MARIANI) |
| STATE FARM MUTUAL AUTOMOBILE | : |
| INSURANCE CO., | : |
|       Defendant. | : |

## MEMORANDUM OPINION

### I.   Introduction

Presently before the Court is a discovery Motion (Doc. 33) filed by Plaintiff James Lane in the above-captioned action. Originally styled "Motion to Extend Discovery Deadline and to Compel Defendant to Respond to Notice to Produce," (Doc. 33 at 1), the Motion has been narrowed to three discrete issues:

> (1) whether the mental impressions of State Farm employees recorded after the filing of the Complaint constitute protected work product; (2) whether the reserve history for plaintiff's claim and the procedures for setting reserves are irrelevant, confidential and privileged; and (3) whether portions of State Farm's Auto Injury Evaluation containing the mental impressions of defense counsel are protected by attorney-client privilege and attorney work product doctrine.

(See Def.'s Supp. Br. in Opp. to Pl.'s Mot. to Compel, Doc. 47, at 1.)[1]

---

[1] Defendant submitted this statement pursuant to a Stipulation signed by the Court and counsel for both parties that stated, "The parties have agreed on a procedure to resolve many of the discovery disputes raised by the motion. To the extent that any disputes remain after further negotiations, the parties will file supplemental briefs addressing only those requests still in dispute within fourteen (14) days." (Stip. to Resolve Pl.'s Mot., Feb. 11, 2015, Doc. 44, at ¶ 3.) Plaintiff's supplemental brief does not dispute that these

For the reasons that follow, the Court will deny the Motion insofar as it seeks to compel the production of these categories of materials.

## II. <u>Analysis</u>

The Court will now address each of the issues enumerated in Defendant's supplemental brief.

### (1) and (3): Privileged Materials

#### a. *Legal Standard*

The Federal Rules of Civil Procedure provide as follows in regards to work-product privilege:

> *Documents and Tangible Things.* Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if:
> (i) they are otherwise discoverable under Rule 26(b)(1);[2] and
> (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

Fed. R. Civ. P. 26(b)(3)(A). However, "[i]f the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal

---

are the issues that remain pending, and indeed addresses each point individually. (*See generally* Pl.'s Supp. Br., Doc. 48, at 1-7.) To the extent Plaintiff's supplemental brief raises other issues, such as the assertion of attorney-client privilege in documents not referenced in Defendant's brief, those issues are discussed in this Opinion as well. The Court treats as moot all briefing that was filed before it approved the stipulation on February 11 (i.e., Docs. 34, 41, and 43), given that the Stipulation indicates that only those issues discussed in subsequent briefs remain in dispute.

[2] Rule 26(b)(1) is a general rule on the discoverability of nonprivileged materials. It is discussed at page 14, *infra*.

2

theories of a party's attorney or other representative concerning the litigation." *Id.* at 26(b)(3)(B). By this language, "Rule 26(b)(3) provides that, even if the party seeking discovery of information otherwise protected by the work product doctrine has made the requisite showing of need and undue hardship, courts must still protect against the disclosure of mental impressions, conclusions, opinions, or legal theories of an attorney and his agents." *In re Cendant Corp. Sec. Litig.*, 343 F.3d 658, 663 (3d Cir. 2003).

> Stated differently, Rule 26(b)(3) establishes two tiers of protection: first, work prepared in anticipation of litigation by an attorney or his agent is discoverable only upon a showing of need and hardship; second, "core" or "opinion" work product that encompasses the "mental impressions, conclusions, opinion, or legal theories of an attorney or other representative of a party concerning the litigation" is "generally afforded near absolute protection from discovery." Thus, core or opinion work product receives greater protection than ordinary work product and is discoverable only upon a showing of rare and exceptional circumstances.

*Id.* (quoting Fed. R. Civ. P. 26(b)(3); *In re Ford Motor Co.*, 110 F.3d 954, 962 n.7 (3d Cir. 1997)).

As to the first tier, a "document is considered to be prepared 'in anticipation of litigation [when] in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have been prepared or obtained because of the prospect of litigation.'" *Serrano v. Chesapeake Appalachia, LLC*, 298 F.R.D. 271, 277 (W.D. Pa. 2014) (quoting *In re Grand Jury Proceedings*, 604 F.2d 798, 803 (3d Cir. 1979)).

> The doctrine of work-product immunity shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case. A party claiming work-product immunity bears the burden of

3

showing that the materials in question were prepared in the course of preparation for possible litigation.

*Holmes v. Pension Plan of Bethlehem Steel Corp.*, 213 F.3d 124, 138 (3d Cir. 2000) (internal quotation marks and citations omitted). "If the party asserting the privilege bears its burden of proof, the party seeking production may obtain discovery" only upon a showing that it has complied with the criteria of Federal Rule 26(b)(3). *Id.*

"Core opinion" work product, on the other hand, "includes such items as an attorney's legal strategy, his intended lines of proof, his evaluation of the strengths and weaknesses of his case, and the inferences he draws from interviews of witnesses." *Sporck v. Peil*, 759 F.2d 312, 316 (3d Cir. 1985). These items are "accorded an almost absolute protection from discovery because any slight factual content that such items may have is generally outweighed by the adversary system's interest in maintaining the privacy of an attorney's thought processes and in ensuring that each side relies on its own wit in preparing their respective cases." *Id.* While the rule against disclosure of core opinion work product is subject to some exceptions,

> the general policy against invading the privacy of an attorney's course of preparation is so well recognized and so essential to an orderly working of our system of legal procedure that a burden rests on the one who would invade that privacy to establish adequate reasons to justify production through a subpoena or court order.

*Hickman v. Taylor*, 329 U.S. 495, 512, 67 S. Ct. 385, 394, 91 L. Ed. 451 (1947).

Finally, to the extent that Plaintiff seeks discovery of material subject to attorney-client privilege, and not merely the work product governed by Federal Rule 26, this Court

4

applies Pennsylvania law. *See* Fed. R. Evid. 501; *United Coal Cos. V. Powell Constr. Co.*, 839 F.2d 958, 965 (3d Cir. 1988). Pennsylvania has codified the law of attorney-client privilege as follows: "In a civil matter counsel shall not be competent or permitted to testify to confidential communications made to him by his client, nor shall the client be compelled to disclose the same, unless in either case this privilege is waived upon the trial by the client." 42 Pa. Cons. Stat. Ann. § 5928. "In addition to confidential communications which flow from a client to his or her attorney . . . the attorney-client privilege applies to confidential communications which flow from an attorney to his or her client to the extent the communications are based upon confidential facts that the client disclosed initially to the attorney." *Slusaw v. Hoffman*, 861 A.2d 269, 273 (Pa. Super. Ct. 2004). "The attorney-client privilege has deep historical roots and indeed is the oldest of the privileges for confidential communications in common law." *Nationwide Mut. Ins. Co. v. Fleming*, 924 A.2d 1259, 1263 (Pa. Super. Ct. 2007) (citing *Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S. Ct. 677, 682, 66 L. Ed. 2d 584 (1981)).

All disputes over privilege (which include the issues denominated (1) and (3) in Defendant's supplemental brief, quoted at page 1, *supra*) arise from the submission of a Privilege Log submitted by the Defendant to the Plaintiff on February 13, 2015. (*See generally* Attorney Joseph Hankins Letter, Feb. 13, 2015, Doc. 47-2, Ex. G; Revised Privilege Log for ECS, Doc. 47-2, Ex. H.)

*b. Redactions for Attorney-Client Privilege in General*

Before the Court can turn to the disputes specifically enumerated in Defendant's supplemental brief, there appears to be a more general dispute in need of resolution.

The Privilege Log lists a series of redacted documents, which, as Plaintiff states, (*see* Pl.'s Supp. Br., Doc. 48, at 4), contain redacted materials on the following Bates-numbered pages: 275-287, 524, 525-26, 541-542, 561, 568, 570, 576-78, 580-81, 620-22, 623-24, 625-26, 687-88, 689, 690, 692, 693, 760, 762-71, 773-74, 812-13, 814-17, 1256-57, 1258-66, 1267-77, 1289-92, 1301-03, 1304-05, 1353-54, 1371-73, 1411, 1415, and 1422-28. Plaintiff does not specify which pages he believes should be disclosed, but simply laments the redactions in general. (*See id.*) He lists these redactions and then adds that, while

> Defendant claims that the materials redacted are protected work product and attorney-client privilege . . . . Due to certain materials in State Farm's . . . log being completely redacted, plaintiff is prevented from knowing whether such materials are in fact attorney-client privilege or work product, or if such materials contain the legal opinion of defendant's attorney relevant to the bad faith claim.

(*Id.* at 4-5.) Therefore, Plaintiff requests that the Court review the redacted materials *in camera*. (*Id.* at 5.)

This argument is meritless. The privileged nature of each discrete set of pages listed above is clearly described in the Privilege Log. With only two exceptions,[3] all redacted

---

[3] The exceptions are pages 541-42 and 1422-28. (*See* Doc. 47-2, Ex. H, at 2, 4.) The first are represented to be documents "pertain[ing] to another, distinct claim [that] contain personal information of persons not related to this matter which is private and not relevant." (*Id.* at 2.) The second set of pages are

6

pages are marked as either billing invoices for legal services or correspondence between State Farm and privately-retained or in-house counsel. These very clearly involve classic cases of attorney-client privilege, as described above. Moreover, Plaintiff puts forth absolutely no showing as to why he is entitled to them, despite the fact that the materials sought are protected by one of the most venerable and stringent privileges at common law. Instead, Plaintiff simply asserts that it is impossible to be "certain that [the documents] are, in fact, attorney-client communications." (*Id.* at 3.) But the hypothetical possibility that representations made by a duly licensed attorney and officer of this court could be found to be utter fabrications is insufficient to carry Plaintiff's burden in overcoming the privilege. Nor does this Court believe it is appropriate to order the Defendant to submit these redacted materials for *in camera* inspection simply because the Plaintiff does not trust counsel's representations. In the absence of any evidence that the statements made before this Court are fraudulent, we shall accept them as true.

The more important arguments involve the first category of the Privilege Log, entitled "State Farm Mutual Automobile Insurance Company – ECS Log,"[4] which refers to Bates-

---

marked as "ECS Log—File Descriptions" and described as "pure work product which is protected under Fed. R. Civ. P. 26(b)(3)." (*Id.* at 4.) The Court has no reason to doubt the accuracy of these representations. That being the case, it sees no justification to order discovery of confidential materials related to a different insured or of an attorney's work product in describing files, absent any argument by Plaintiff as to why it should do so.

[4] "ECS" is an acronym that Defendant uses for the term "Enterprise Claim System." (Doc. 47 at 2.) According to Defendant, "[t]he ECS is a proprietary web-based system used by State Farm claims associates in handling claims. The ECS is comprised of what would traditionally be thought of as a 'claims file' and additional documents related to the claim." (*Id.*)

numbered pages 1-274 of Defendant's disclosed materials. (*See* Doc. 47-2, Ex. H, at 1-2.) It is to these issues that the Court now turns.

### c. *Post-Complaint Mental Impressions of State Farm Employees*

First, as stated in Defendant's supplemental brief, there is a dispute as to "whether the mental impressions of State Farm employees recorded after the filing of the Complaint constitute protected work product." (Doc. 47 at 1.) The Privilege Log represents that, from pages

> SF 0056 to SF 0057, portions of the ECS which were created <u>after</u> plaintiff filed his complaint remain redacted on the basis that they were prepared in anticipation of litigation or for trial by State Farm or its representatives and contain the mental impressions, conclusions, opinions, or legal theories of State Farm representatives concerning the litigation. Additionally, portions of the ECS on those pages that contain the mental impressions of defense counsel or are otherwise protected by the attorney client privilege or attorney work product doctrine have been redacted.

(Doc. 47-2, Ex. H, at 1-2.) As discussed in more detail later in this Opinion, the Log further represents that the other portions of the ECS log created *before* Plaintiff filed his Complaint, i.e., SF 0058 to 0274, have only been redacted to the extent they are "protected by attorney-client privilege" or "constitute attorney work product" and that entries "which constitute the mental impressions of State Farm claim representatives have been revealed." (*Id.* at 2.)

As discussed above, the general rule is that "a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party," Fed. R. Civ. P. 26(b)(3), as these documents are represented to be. While no

8

evidence has been offered beyond the Privilege Log and the parties' arguments, the party asserting the privilege may carry its initial burden by submitting a properly documented privilege log. *See Saldi v. Paul Revere Life Ins. Co.*, 224 F.R.D. 169, 193 (E.D. Pa. 2004). "If a privilege log is submitted, it should 'identify each document and the individuals who were parties to the communications, providing sufficient detail to permit a judgment as to whether the document is at least potentially protected from disclosure.'" *McCrink v. Peoples Benefit Life Ins. Co.*, 2004 WL 2743420, at *7 (E.D. Pa. Nov. 29, 2004) (quoting *Bowne of New York City, Inc. v. AmBase Corp.*, 150 F.R.D. 465, 471 (S.D.N.Y. 1993). Here, it is a close call as to whether the Privilege Log provides enough detail to permit this conclusion. But the Court concludes that the information provided in the Privilege Log is just barely sufficient to meet Defendant's initial burden that a privilege potentially applies. The Log identifies the documents, states that they were created by State Farm employees (albeit without naming those employees), and states that these documents were created as to Plaintiff's claim file after the date on which a civil Complaint on this very matter was filed. While these representations do not contain detailed factual support, they are enough to carry the burden of proof that the documents were work product created in anticipation of (then-ongoing) litigation.

Therefore, in order to procure discovery of these documents, Plaintiff would need to show entitlement under Rule 26(b)(3). To this end, Plaintiff argues that the post-Complaint mental impressions of State Farm employees are necessarily relevant to a bad faith claim.

Specifically, he argues that the "insurer had a continuing duty to investigate the insured's claim even after suit was filed. Since State Farm is still evaluating the UM claim, plaintiff is entitled to discovery of records and materials post-dating the litigation." (Doc. 48 at 2-3.)

This argument is subject to multiple deficiencies. First, while the Court understands that Plaintiff has not seen the two pages of redacted post-Complaint mental impressions and therefore cannot be expected to discuss their content, Plaintiff puts forward no plausible justifications as to how post-Complaint mental impressions *could* be relevant to the facts of his specific bad faith claim. Instead, he simply asserts that relevant documents are discoverable in the abstract: a truism which does nothing to carry his burden of persuasion on his Motion. Second, the mere fact that Plaintiff has asserted a bad faith claim does not by itself overturn the work-product privilege. Courts in the Third Circuit have held that the mere existence of a bad faith claim does not make otherwise privileged information *per se* discoverable. *See, e.g., Fid. & Deposit Co. of Maryland v. McCulloch*, 168 F.R.D. 516, 525 (E.D. Pa. 1996); *McCrink*, 2004 WL 2743420, at *7. Plaintiff would need to demonstrate more than the mere fact that a bad faith claim is at issue to establish an entitlement to privileged documents.

But more fundamentally, even if none of the foregoing were true, Plaintiff would still not be entitled to discover these documents under Rule 26. That Rule provides that privileged materials may only be discovered if, among other things, "the party shows that it has substantial need for the materials to prepare its case and cannot, without undue

10

hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(ii). Plaintiff has not even mentioned how he could not obtain the substantial equivalent by other means without undue hardship. Thus, when Plaintiff fails to even offer an argument, he has plainly forfeited his entitlement to discovery under the Rule. And indeed, given that Plaintiff has had the opportunity for bad faith discovery, (see Doc. 44 at ¶ 1), which may include deposing State Farm claims adjusters, and that this Court has already held that Plaintiff's Complaint as drafted before the advent of discovery already stated a claim for bad faith, (see Mem. Op., May 7, 2015, Doc. 51, at 7), it appears, in the absence of evidence or argument to the contrary, that Plaintiff has neither a substantial need for these two pages nor an inability to obtain the substantial equivalent by other means without undue hardship.

### d. Pre-Complaint Attorney Communications and Work Product

The next dispute also arises from the portion of the Privilege Log referring to State Farm's ECS Log. The relevant portion reads: "From SF 0058 to SF 0274, which are portions of the ECS log that were created <u>before</u> plaintiff filed his complaint, entries protected by attorney-client privilege or which constitute attorney work product remain redacted. Entries which constitute the mental impressions of State Farm claim representatives have been revealed." (Doc. 47-2, Ex. H, at 2.) Defendant states that "[o]nly two redactions were made" in this section. (Doc. 47 at 20.) It continues:

> They are on pages SF 0243 Revised 2/12/15 and SF 0245 Revised 2/12/15. Both of the redactions are to portions of the ECS where the claim representative directly copied from correspondence from defense counsel

relating defense counsel's mental impressions about the EUO,[5] or where the claim representative indicated he was summarizing the same. The same statements taken from defense counsel's correspondence were repeated in drafts of the Auto Injury Evaluation on pages SF 0251-0253, 0258-0260, and 0262-0263 Revised 2/12/15.

(*Id.*) Plaintiff's supplemental brief does not dispute that these are the pages on which the redactions were made.

It is unnecessary to proceed to an extended discussion of this dispute, because the logic of the previous sections of this Opinion compels the conclusion that discovery must be denied here as well. If the work product of State Farm claim representatives is protected from discovery, then certainly attorney-client communications and records of an attorney's mental impressions on the case—subjects which enjoy "almost absolute" privilege—are protected as well. Here, "a burden rests on the one who would invade that privacy to establish adequate reasons to justify production through a subpoena or court order." *Hickman*, 329 U.S. at 512, 67 S. Ct. at 394.

Plaintiff's attempts to provide such justification are plainly inadequate. While he attempts a cursory argument to the effect that attorney communications may be discoverable when they are put at issue in the litigation, he offers no explanation as to how this general principle applies in any way to this case. (*See* Doc. 48 at 3-4.) There is no evidence that Defendant has ever tried to defend against the bad faith claim by relying on the advice of counsel. Nor can Plaintiff avoid this fact by stating that "the documents that

---

[5] This term is undefined in Defendant's Brief.

12


have been redacted from State Farm's ECS log may contain information from defendant's attorney regarding the UM claim." (Doc. 48 at 4.) The Court assumes that State Farm's lawyers will communicate with their client "regarding" the underlying issues they are retained to litigate; if this were not the case, State Farm would be getting very little return on its litigation expenses. However, the mere fact that attorney-client communications may relate to the lawsuit does not expose them to discovery. Quite the contrary: it is in exactly these situations where attorney-client privilege is most properly invoked. To allow Plaintiff to prevail on this argument would essentially obliterate the privilege, as it would open all attorney-client communications pertaining to the underlying litigation—which can be expected to include the vast majority of such communications—to discovery.

**(2) Reserve History**

The final dispute, which is denominated (2) in Defendant's supplemental brief, page 1, *supra*, pertains to State Farm's reserve history. In the portion of the Privilege Log related to State Farm's ECS Log, State Farm states: "Reserve amounts remain redacted as they are irrelevant and require a showing of good cause to obtain and constitute privileged work product." (Doc. 47-2, Ex. H, at 1 (internal citations omitted).) In addition to the historical amounts of reserves, Defendant also resists disclosing "manuals and procedures for setting reserves." (Doc. 47 at 19.)

### a. *Legal Standard*

Pennsylvania law requires casualty insurance companies to "maintain a claim reserve for incurred but unpaid claims and an active life reserve which shall place a sound value on its liabilities and be not less than the reserve according to appropriate standards set forth in regulations issued by the Insurance Commissioner." 40 Pa. Cons. Stat. Ann. § 93.

Plaintiff's document request sought:

> Copies of loss reserve history with regard to plaintiff's claim including, but not limited to:
> (a) Original reserves and all changed;
> (b) Methods and criteria for setting reserves.

(*See* Pl.'s Request for Production of Documents, Doc. 33-3, Ex. B, at ¶ 15.) To the extent this request seeks privileged material, it is subject to the standards set forth in the preceding section. To the extent that it request seeks nonprivileged materials, it is subject to the general discovery rule that:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense—including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Fed. R. Civ. P. 26(b)(1).

### b. Analysis

Plaintiff does not explain in his briefs the purpose for which he seeks the reserve history. He merely asserts, in the course of three sentence of argument, that, because his "claim is based upon a dispute regarding the value of the claim and how that claim is being processed, defendant's reserve history and procedures are relevant to the claim and are therefore subject to discovery." (Doc. 48 at 5.) But he does not explain why this is so. Because Rule 26 allows the Court to order discovery on relevant matters "for good cause," it remains incumbent on the Plaintiff to explain how the reserve history is relevant. The mere fact that Plaintiff's Complaint alleges a bad faith refusal to pay his policy proceeds does not by itself indicate relevance, because the reserve history and procedures do not *ipso facto* have any necessary connection to the alleged bad faith.

Nor are the cases that Plaintiff cites relevant to this issue. (*See id.*) These are simply cases in which reserve history was found to be either discoverable or not under the facts of each case. The Court does not dispute the proposition that reserve information may be discoverable upon a showing of good cause. *See Maiden Creek T.V. Appliance, Inc. v. Gen. Cas. Ins. Co.*, 2005 U.S. Dist. LEXIS 14693, at *3 (E.D. Pa. July 21, 2005) (collecting cases). However, this determination is by its nature case-specific. When Plaintiff has offered no explanation for how the reserve history is relevant or reasonably calculated to lead to the discovery of admissible evidence in connection with the issues presently before us, he has not met the burden of persuasion on his own motion.

15

For these reasons, the Court need not analyze the issue of whether the reserve history contains privileged materials. Because Plaintiff has failed his lighter burden of showing good cause to discover nonprivileged materials, he would necessarily also fail the higher burden of overcoming the various types of privilege.

### III. Conclusion

Based on the foregoing reasons, Plaintiff's Motion to Compel Discovery (Doc. 33) is **DENIED**. A separate Order follows.

_/s/ Robert D. Mariani_
Robert D. Mariani
United States District Judge